**DELTA AIR LINES, Inc., Plaintiff,**

v.

**W. Sam EDWARDS, Admr. c. t. a. Estate of Marion H. Allen, former Collector of Internal Revenue (Georgia), Defendant.**

**Civ. A. No. 1108.**

United States District Court
M. D. Georgia, Macon Division.

April 23, 1957.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., James N. Frazer and Elliott Goldstein, Atlanta, Ga., of counsel, for plaintiff.

Frank O. Evans, U. S. Atty., Macon, Ga., Joseph H. Davis, Asst. U. S. Atty., Macon, Ga., David A. Wilson, Jr., Atty., Dept. of Justice, Tax Division, Washington, D. C., for defendant.

DAVIS, Chief Judge.

This is an action brought under Section 1340 of the Judicial Code, 28 U.S. C. § 1340, to recover interest paid by the Plaintiff, Delta Air Lines, Inc. to the Collector of Internal Revenue for the District of Georgia. The payment arose out of an alleged deficiency in excess profits tax. The alleged deficiency in excess profits tax was never paid, liability for payment having been wiped out by a loss in a later year. The parties are in agreement that, if the amount of the deficiency ever became due, then under applicable decisions of the Supreme Court of the United States, even though the tax was never paid, the Plain-

tiff is liable for interest on the amount of the tax from the date upon which the tax became payable up to the date that a refund would have been payable to the taxpayer because of the loss carryback in a future year. Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346; United States v. Koppers Co., Inc., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302.

The Collector, having assessed interest on a potential deficiency in excess profits tax, the taxpayer on June 27, 1951 paid $75,363.15 to the Collector, of which $66,017.77 was interest on the potential deficiencies, and $9,345.38 was interest on interest. A timely claim for refund was filed and denied.

All of the facts which are considered necessary to a decision of the case have been stipulated. The stipulation of facts so entered into is adopted and approved by the Court. Under this stipulation, the sole question for determination by the Court is whether compensation received by the Plaintiff in its 1942 fiscal year as payment for the carriage of mail in its 1940 fiscal year should be included in its 1940 income for the purpose of computing base period net income. If this payment should be included in 1940 income, then its excess profits credit is correspondingly increased. Using the increased credit, no excess profits tax was payable by the Plaintiff and, therefore, no interest was due from it. On the other hand, if this payment should be included in the year 1942, rather than in the year in which the mail was carried by the Plaintiff, excess profits tax was payable, and interest on the potential deficiency was properly paid to the Collector.

The Plaintiff is a carrier by air, certificated by the Civil Aeronautics Board. A part of its income consists of compensation paid by the United States of America for the carriage of mail by air. It keeps its records on an accrual system of accounting, and since its organization has consistently accrued and recorded in its records income from the carriage of mail by air in the month in which the mail was carried, rather than in the month in which pay was received by it from the United States of America. As of the end of each month, the mail pay properly accruable is computed by the Plaintiff by multiplying the "units of service" (the measure of mail carried) times the mail-pay rate then current. The amount thus computed is added to income for that month, a corresponding amount being set up as an account receivable.

In the year 1939, shortly after the passage of the Civil Aeronautics Act of 1938 and pursuant to the mandate of that Act, 52 Stat. 977, 49 U.S.C.A. § 401 et seq., a proceeding was initiated by the Civil Aeronautics Board to determine whether or not the rates of compensation paid the Plaintiff for the transportation of mail were fair and reasonable. A new rate was determined by the Civil Aeronautics Board in 1942. Pending the decision, the Plaintiff received pay at the rate in effect at the time of the passage of the Civil Aeronautics Act. After the promulgation of the decision of the Civil Aeronautics Board, the plaintiff received additional pay for the carriage of mail for the years 1940, 1941 and 1942. The additional sum payable for the fiscal year ending June 30, 1940 was received in the fiscal year ending June 30, 1942.

Upon the trial of this action, the Plaintiff introduced certain evidence with respect to the nature of the rate fixed by the Civil Aeronautics Board bearing upon the question of whether the rate was "temporary" or "permanent". In the view the Court takes of the case, none of this evidence was necessary to a decision of the cause, nor has it been considered, and no ruling is made with respect to its admissibility.

So stated, the issue before the Court becomes a simple one, namely, whether the mail pay received by Delta should be considered as a part of its income for the year in which mail was carried by it and the expenses of transporting mail incurred, or in a later year in which the new rate was determined and the pay

actually received. The timing of this accrual becomes extremely important in the determination of excess profits tax payable by an air carrier. In order to determine whether or not the profits of an air carrier during the years of World War II were excessive, Section 727(h) of the Internal Revenue Code 1939, 26 U.S.C.A. Excess Profits Taxes, § 727(h), made specific provision for air carriers. The effect of that provision was that if, after excluding from taxable net income gross mail revenues received in a taxable year, the resulting balance was equal to or less than the total excess profits tax credit applicable to that year, revenue from the carriage of mail was added back to taxable income for the purpose of computing excess profits tax liability. In the instant case, if income from the carriage of mail in 1940 is included in 1940 taxable income for the purpose of fixing the excess profits credit, then no excess profits tax was payable in any of the excess profits tax years.

The Court concludes that, for purposes of the computation of Plaintiff's base period net income, the mail pay received by it for the carriage of mail in 1940 is properly includible in that year's income. Since the Plaintiff kept its accounts on the accrual basis, this item is properly includible in income in the year in which the services were rendered and the right to receive pay therefor accrued. Indeed, to do otherwise would distort, not only the income of the Plaintiff but, its excess profits credit as well.

The test provided by the Internal Revenue Code is one of "proper accounting". Section 42(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 42(a). Regulations 118 provide that "the time as of which any item of gross income * * * is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income." Regulations 118, Sec. 3941–1.

The decision of the Civil Aeronautics Board with reference to the mail pay due Plaintiff (Order and Opinion Serial Number 1508, Docket No. 331) is conclusive as to the amount due it for the year 1940, and as to the proper amount which should have been received by it in that year for the carriage of mail.

The Defendant, conceding that the income was earned in 1940 and that the expenses necessary to earn it were incurred in that year, contends that the amount received cannot be accrued in that year because, until the decision of the Civil Aeronautics Board in 1942, the Plaintiff could not know the amount that would actually be received by it. See Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538. The Court does not agree, either as a matter of fact or of law. The amount due to the Plaintiff under the provisions of the Civil Aeronautics Act of 1938 was capable of estimate in 1940, under the standards set by that Act; and since the services were rendered in that year, as a matter of law, the Plaintiff was required to include this income in the year in which it was earned. Since the Plaintiff had in its own books and accounts data to which it could apply the tests required by the Civil Aeronautics Act of 1938, the decision of the Supreme Court of the United States in Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111 is controlling. Although the amount due to the Plaintiff was not known at the time the proceeding to fix its mail pay rate was instituted, its right to receive additional pay had been fixed by the passage of the Act and the institution of proceedings. Since the right to receive additional pay accrued in 1940, the amount received is properly includible in that year. See Commissioner of Internal Revenue v. Old Dominion S. S. Co., 2 Cir., 47 F.2d 148; Commissioner of Internal Revenue v. Midland Valley R. Co., 10 Cir., 57 F.2d 1042; Helvering v. St. Louis Southwestern R. Co., 8 Cir., 66 F.2d 633; Southern Ry. Co. v. Commissioner, 4 Cir., 74 F.2d 887; Helvering v. Gulf M. & N. R. Co., 63 App.D.C. 244, 71 F.2d 953.

It is further concluded that sound accounting practice requires the inclusion of the additional income in the Federal Income Tax Return for the year in which the expenses were incurred to produce it. To hold otherwise "would produce an unfair distortion of the taxpayer's actual profits in each of the years". Commissioner of Internal Revenue v. Brooklyn Union Gas Co., 2 Cir., 62 F.2d 505, 507.

Accordingly, the prayers of the Plaintiff are granted, and judgment may be entered in its favor in the amount of $75,363.15, with interest thereon as provided by law. The pleadings, stipulation and this memorandum will be considered compliance with Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

Let counsel for the Plaintiff present a judgment in accordance with the foregoing memorandum.